UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER F.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     v. | ) No. 1:20-cv-02968-JMS-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2] | ) |
| | ) |
|     *Defendant*. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

    Plaintiff Heather F. filed for supplemental security income ("SSI") from the Social Security Administration ("SSA") on June 15, 2016, alleging an onset date of February 13, 2015. [Filing No. 13-5 at 2-7.] Her application was denied on August 26, 2016, [Filing No. 13-4 at 2], and upon reconsideration on February 13, 2017, [Filing No. 13-4 at 11]. Administrative Law Judge Bernadette Freeman conducted a hearing ("the First Hearing") on October 11, 2018, which was continued to allow additional time for Heather F. to gather medical records. [Filing No. 13-2 at 74-97.] Subsequently, Administrative Law Judge Kimberly S. Cromer ("the ALJ") conducted a hearing ("the Second Hearing") on July 18, 2019, [Filing No. 13-2 at 51-76], before issuing a decision on August 21, 2019, in which she concluded that Heather F. was not entitled to receive

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

benefits, [Filing No. 13-2 at 33-44]. The Appeals Council denied review on September 14, 2020. [Filing No. 13-2 at 2.] Heather F. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards, and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[3]  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits ("DIB") and SSI, which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Heather F. was 39 years old on the alleged onset date. [*See* Filing No. 13-2 at 42.] She holds a high school diploma and previously worked as a housecleaner. [Filing No. 13-2 at 42.][4] Following the Second Hearing, the ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Heather F. was not disabled. [Filing No. 13-2 at 44.] Specifically, the ALJ found as follows:

- At Step One, Heather F. had not engaged in substantial gainful activity[5] since May 26, 2016, the application date. [Filing No. 13-2 at 38.]

- At Step Two, Heather F. has "the following severe impairments: anxiety, fibromyalgia, cervicalgia, bipolar, attention deficit hyperactivity disorder (ADHD), history of congenital hip dysplasia, spondylosis/bilateral sacroiliitis, and new onset mild talonavicular joint osteoarthritis." [Filing No. 13-2 at 35.]

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 36.]

- After Step Three but before Step Four, Heather F. had the RFC to perform "sedentary work as defined in 20 CFR 416.967(a) with the following nonexertional limitations:  Claimant can never climb ladders, ropes, or scaffolds and can never crawl.  Claimant can perform postural activities (i.e., climbing ramps/ stairs, balancing, stooping, crouching, or kneeling) only on an occasional basis.  Claimant cannot perform work at unprotected [machinery] or around hazardous machinery.  Claimant cannot commercially drive.  Claimant is limited to occasional use of bilateral operation of foot control.  Claimant is to avoid concentrated exposure to cold, heat, humidity, wetness, and pulmonary irritants.  Claimant is to avoid concentrated exposure to vibration; work on a flat even surface.  Mentally, the claimant is limited to simple routine work.  Claimant should have no interaction with the general public as part of routine job duties.  Claimant is limited to occasional interaction with coworkers and supervisors.  The claimant is restricted from fast-paced production work[,] assembly line or work where machine sets the pace.  The work is of a variable rate.  Claimant is to have no strict production, hourly requirements but rather end of the day work goals.  Claimant cannot work tandemly." [Filing No. 13-2 at 38.]

- At Step Four, Heather F. is unable to perform any past relevant work, including past relevant work as a housecleaner. [Filing No. 13-2 at 42.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Heather F.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as a document preparer, surveillance system monitor, touchup screener, and tube operator. [Filing No. 13-2 at 43.]

## III.
### DISCUSSION

Heather F. argues that: (1) the ALJ's conclusion that she could sustain effective ambulation is not supported by substantial evidence; (2) the ALJ's finding that she could perform "simple routine work" with no fast-paced production work does not incorporate all of her restrictions due to her limitations in interacting with others and her ability to concentrate, persist, and maintain pace; and (3) the ALJ's failure to call a mental health professional to testify at the Second Hearing was harmful error.  The Court considers each argument in turn.

5

### A. Heather F.'s Ability to Sustain Effective Ambulation

Heather F. argues that the ALJ's conclusion that she could effectively ambulate is not supported by substantial evidence for two reasons. [Filing No. 15 at 17-19.] First, Heather F. argues that the ALJ failed to include her need for a cane in the RFC and the hypotheticals to the VE. [Filing No. 15 at 18.] Second, Heather F. argues that the ALJ failed to explain why she concluded that Heather F. could stand and walk for two hours in an eight-hour day in light of her limitations. [Filing No. 15 at 18-19.]

In response, the Commissioner argues that the ALJ "appropriately resolved the inconsistencies in the record" and determined that Heather F. was able to "effectively ambulate within the parameters of the very restrictive sedentary RFC finding with work on flat surfaces and the hypothetical question to the [VE] which included a sit/stand at will option." [Filing No. 17 at 11-14.]

Heather F. replies that "there is no logical bridge to the conclusion that [she] could sustain standing and walking for two hours in an eight-hour workday without an assistive device when she is only able to walk for five minutes without a cane and has documented osteoarthritis in her foot." [Filing No. 18 at 2.]

The RFC assessment "must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). As discussed above, an ALJ must "build an accurate and logical bridge" from the evidence to the ALJ's conclusions expressed in her decision. *Giles v. Astrue,* 483 F.3d 483, 487 (7th Cir. 2007) (internal quotations omitted). In doing so, the ALJ need not specifically address every piece of evidence but "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The

case must be remanded if the ALJ's decision lacks evidentiary support or fails to mention highly pertinent evidence. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (*per curiam*).

In the present case, the ALJ determined that Heather F. had the RFC to perform sedentary work. [Filing No. 13-2 at 38.] Sedentary work is performed primarily in a seated position, although walking and standing are occasionally required. 20 C.F.R. § 416.967(b); SSR 83-10. While "[w]ork processes in specific jobs will dictate how often and how long a person will need to be on his or her feet," sedentary work should generally require no more than 2 hours of standing or walking in an 8-hour workday. SSR 83-10.

The Seventh Circuit has addressed cane utilization as part of an RFC in *Thomas v. Colvin*, 534 F. App'x 546, 549 (7th Cir. 2013). In *Thomas*, the Court found that remand was appropriate where the ALJ found that the claimant could stand and walk for two hours in an eight-hour day but "ignored virtually all the evidence in the record demonstrating [the claimant's] need for a cane." *Id.* The Court further found that the ALJ erred by failing to address the VE's testimony that the claimant could not perform any jobs at the assessed RFC level if she needed a cane. *Id.*

The present case is distinguishable from *Thomas* because, here, the ALJ considered conflicting evidence regarding Heather F.'s gait and need for a cane during the RFC determination. [Filing No. 13-2 at 42.] Specifically, the ALJ observed that during an August 16, 2016 examination, Heather F.'s gait was described as "slow, slightly limping with the left leg" and that a cane was medically necessary for Heather F.'s support. [Filing No. 13-2 at 41.] However, the ALJ notes that subsequent examinations found that Heather F. had a normal gait and did not use an assistive device. [Filing No. 13-2 at 41-42.] The ALJ further took notice of the opinion of the

7

state medical consultant, Dr. Montoya, who determined that Heather F. is capable of sedentary work with postural limitations. [Filing No. 13-2 at 42.]

Additionally, unlike in *Thomas,* the VE in this case testified that Heather F.'s ambulatory limitations would not impact the availability of jobs available to Heather F. given the "sit/stand flexibility" provided by those jobs. [Filing No. 13-2 at 71.] Courts within this Circuit have recognized that jobs which accommodate sit/stand flexibility during the workday are also likely to accommodate the need to use a cane during periods of standing or walking. *Vrooman v. Comm'r of Soc. Sec.,* 2020 WL 4815810, at *8 (E.D. Wis. Aug. 19, 2020), *aff'd sub nom. Vrooman v. Kijakazi*, 2021 WL 3086196 (7th Cir. July 21, 2021). Here, the Court finds no basis in the record to conclude that the jobs identified by the VE would similarly not accommodate Heather F.'s need to use a cane.

For the reasons stated above, the Court finds that substantial evidence supports the ALJ's decision. *Stephens*, 888 F.3d at 327. Even if reasonable minds could differ on the weight to give the conflicting records, the Court will not substitute the ALJ's judgment with its own. *Zoch*, 981 F.3d at 602; *see also, Lisa K. v. Kijakazi*, 2021 WL 3660471, at *13 (S.D. Ind., August 18, 2021) (declining to remand based on the ALJ's failure to include an RFC cane limitation in light of inconsistencies in the record).

### B. Heather F.'s Mental Health Limitations

The ALJ found that Heather F. had moderate limitations with (1) interacting with others and (2) concentration, persistence, and maintaining pace. [Filing No. 13-2 at 37.] Accordingly, the ALJ determined that Heather F. had the RFC to perform simple routine work with no interaction with the general public, occasional interaction with coworkers and supervisors, no fast-paced production work, no strict production quotas, and no tandem work. [Filing No. 13-2 at 38-

39.] Heather F. argues that the ALJ failed to incorporate these restrictions into the RFC determination that she could perform "simple routine work" with no fast-paced production. [Filing No. 15 at 20-22.] The Court will address each limitation separately.

*1. Heather F.'s Limitations in Interacting with Others*

With respect to her limitation in interacting with others, Heather F. argues that the ALJ improperly focused on evidence that supports the ALJ's conclusion, including Heather F.'s ability to cooperate with the consultative examiner and interact with her mother. [Filing No. 15 at 20.] Heather F. argues that this evidence "in no way speaks to her ability to relate to others, even occasionally, on the job site." [Filing No. 15 at 20.]

The Commissioner responds that the ALJ's determination is supported by the consultative examination performed by Dr. Hicks, who determined that Heather F.'s "remote memory was intact, she was cooperative, and she was able to handle self-care tasks." [Filing No. 17 at 17 (citing Filing No. 13-2 at 37).] Additionally, the Commissioner argues that other providers observed that Heather F. was cooperative and had an appropriate/normal mood and affect. [Filing No. 17 at 17.] Finally, the Commissioner argues that while the ALJ found greater limitations based on Heather F.'s testimony, no provider placed greater limitations on Heather F.'s functioning due to her mental impairments, and she has not established that further restrictions were required. [Filing No. 17 at 18.]

Heather F. replies that her "providers['] inability or unwillingness to complete an opinion statement should not be interpreted as evidence that they do not believe she is severely limited." [Filing No. 18 at 5.] Heather F. further replies that "even if the ALJ gave greater limitations" than her providers, the ALJ's "explanation as to why she did not find greater limitations in this category is not supported by substantial evidence." [Filing No. 18 at 6.]

9

To establish disability, a mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning, such as interacting with others. 20 C.F.R. Pt. 404, Subpt. P, App. 1. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A marked limitation means functioning independently, appropriately, effectively, and on a sustained basis in this area is seriously limited. *Id.*

In this case, the ALJ determined that Heather F. had a "moderate limitation" in interacting with others, after "listening to [Heather F.'s] testimony." [Filing No. 13-2 at 38.] None of Heather F.'s physicians recommended a more restrictive limitation and, in fact, several physicians indicated that Heather F. only had a mild limitation in this area. [Filing No. 13-3 at 8; Filing No. 13-3 at 22.] Additionally, the record establishes that prior to her alleged onset date, Heather F. was able to sustain employment despite her mental impairments, which existed at approximately the same level of severity. [Filing No. 13-2 at 39.] Despite this level of functionality, the ALJ determined that Heather F. "should have no interaction with the general public as part of routine job duties" and should be "limited to occasional interaction with co-workers and supervisors." [Filing No. 13-2 at 38.]

As a general rule, "[t]here is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018); *Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir. 2010). Additionally, while Heather F. testified at the Second Hearing that she has a limited ability to engage in close personal relationships, the Seventh Circuit has recognized that restrictions to no more than occasional contact with others – as included in Heather F.'s RFC – are not "in tension with an

inability to engage in close personal relationships." *Milliken v. Astrue*, 397 F. App'x 218, 223 (7th Cir. 2010).

Because Heather F. "does not point to any objective evidence or medical opinions in the record that support stricter limitations" regarding her ability to interact with others, the Court finds no basis to remand. *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021).

>   2. *Heather F.'s Limitations with Concentration, Persistence, and Maintaining Pace*

Heather F. argues that the ALJ's finding that she could sustain "simple, routine work" that allows for end-of-day production goals fails to incorporate her concentration, persistence, and pace limitations. [Filing No. 15 at 21.] Specifically, Heather F. argues that "[w]ith no hourly requirements, [she] would be left to manage her production over the course of the day to meet her goal" and "the record does not support the conclusion that [she] would be capable of doing this." [Filing No. 15 at 21.]

The Commissioner responds that while Heather F.'s providers found that her pace was slow, her providers also found that she does not require supervision, she has average judgment, and she has only a moderate level of distractibility. [Filing No. 17 at 19.]

Heather F. replies that "[t]here is no evidence that the lack of cognitive deficits and the ability to participate in one's own treatment precludes a finding of more extensive limitations in the ability to concentrate, persist, and maintain pace." [Filing No. 18 at 6.]

As with her limitation in interacting with others, the ALJ determined that Heather F. had a "moderate limitation" in concentration, persistence, and maintaining pace after "listening to [Heather F.'s] testimony." [Filing No. 13-2 at 38.] In making her determination, the ALJ observed that the record "does not document cognitive deficits," and there was "no indication from treating sources" that concentration, persistence, or pace were concerns for Heather F. [Filing No. 13-2 at

11

37-38.] Additionally, the ALJ observed that the state medical consultant determined that Heather F. has "no mental impairment" and only a "mild" limitation in concentration, persistence, and pace. [Filing No. 13-2 at 38.] Nevertheless, the ALJ limited Heather F.'s RFC to "simple routine work" with no "fast-paced production" and "no strict production, hourly requirements but rather end of the day work goals." [Filing No. 13-2 at 41.]

The Seventh Circuit has recognized that an RFC that discusses the claimant's ability to "meet production requirements" and need for flexibility adequately addresses concentration, persistence, and pace limitations. *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (internal quotations omitted).

The Court finds that the ALJ adequately addressed Heather F.'s concentration, persistence, and pace restrictions. The ALJ expressed Heather F.'s RFC in terms of her ability to meet production requirements, including no strict production or hourly conditions but rather end-of-day work goals. *Martin*, 950 F.3d at 374. Accordingly, the Court finds no basis to remand with respect to Heather F.'s concentration, persistence, and pace limitations.

### C. The ALJ's Failure to Call a Mental Health Professional

Heather F. argues that the ALJ erred by failing to call a mental health expert. [Filing No. 15 at 23.] Heather F. argues that ALJs have the discretion to call a medical expert, but the ALJ failed to do so during the Second Hearing despite the medical expert's recommendation during the First Hearing. [Filing No. 15 at 23.]

The Commissioner responds that the ALJ did not abuse her discretion by failing to call a mental health expert because the record contained sufficient evidence upon which the ALJ could render an informed decision. [Filing No. 17 at 21.] Additionally, the Commissioner argues that it was Heather F.'s burden to prove disability, and the First Hearing was continued so that Heather F., who was represented by counsel, could seek additional records related to her mental impairment or request a consultative examination. [Filing No. 17 at 23.] The Commissioner argues that Heather F. failed to meet her burden and now seeks to "shift her burden to the Commissioner, which she cannot do." [Filing No. 17 at 23.]

Heather F. replies that the Commissioner is correct that it is her burden to prove disability, but it is the ALJ's burden to ensure that the record is complete. [Filing No. 18 at 7.] Heather F. argues that there was a "clear statement" from the medical expert during the First Hearing that the record should be further developed concerning her mental health, yet the ALJ failed to do so. [Filing No. 18 at 7.]

In social security matters, the claimant bears the burden of proving disability, whereas the ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The completeness of an administrative record generally falls within the ALJ's discretion. *Thomas,* 745 F.3d at 808. However, the "degree of the ALJ's responsibility to take the initiative [to further develop the record] is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant." *Nicholson v. Astrue*, 341 F. App'x 248, 254 (7th Cir. 2009). As a general rule, the ALJ is not required to call a medical expert unless it is necessary to make an informed decision. *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000).

During the First Hearing, Heather F. was represented by counsel. [Filing No. 13-2 at 90.] While testifying, the medical expert was clear that he was not a mental health provider and that his

13

"suggestion" regarding Heather F.'s need to receive a psychological examination was purely an "editorial comment." [Filing No. 13-2 at 89.] Further, the ALJ dedicated a substantial portion of the First Hearing to discussing with both Heather F. and her counsel what additional medical records existed, including inquiring if Heather F. wished to receive a psychological examination. [Filing No. 13-2 at 89-98.] The ALJ then agreed to a one-time continuance for Heather F. to procure additional medical records specifically related to her mental health. [Filing No. 13-2 at 98.]

During the Second Hearing, Heather F. again was represented by counsel. [Filing No. 13-2 at 50.] The record during the Second Hearing contained assessments from three different psychologists. [Filing No. 13-3 at 8-9; Filing No. 13-3 at 104-105; Filing No. 13-7 at 124-126.] Additionally, Heather F. testified regarding her mental health concerns. [Filing No. 13-2 at 61-64.]

The Court finds that the ALJ did not abuse her discretion in failing to call a medical expert during the Second Hearing. The ALJ was not required to call a medical expert unless there was insufficient evidence to make an informed decision. *See, Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Green*, 204 F.3d at 781. Here, the ALJ had sufficient information upon which to base her decision – including three different psychological assessments and Heather F.'s testimony. The Court finds that the ALJ was not required to solicit more medical information or another medical opinion to support her decision. If additional documentation was necessary to demonstrate Heather F.'s disability, the burden to develop such evidence was on Heather F. and her counsel and not on the ALJ. *Nelms*, 553 F.3d at 1098.

For the reasons stated above, the Court declines to remand based on the ALJ's failure to call a mental health professional to testify during the Second Hearing.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Heather F. to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 1/6/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**